BEN LOVEMAN, SBN 249970
REEVES IMMIGRATION LAW GROUP
425 California Street Suite 1250
San Francisco, CA 94104
Tel: (415) 568-3777
bloveman@reevesimmigration.com

Attorneys for Petitioner

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAMBO JAMES YIM (025 110 060),<br><br>*Petitioner,*<br>v.<br><br>ERNESTO SANTACRUZ JR., Acting Field Office Director, Los Angeles Office of Detention and Removal, U.S. Immigration and Customs Enforcement; TODD BLANCHE, Acting Attorney General of the United States,<br><br>*Respondents*. | Case No.<br><br>VERIFIED PETITION FOR WRIT OF HABEAS CORPUS |

# I. INTRODUCTION

1. Petitioner, Sambo James Yim, brings this this habeas petition seeking an order of immediate release as well as injunctive relief from removal until and unless Respondents comply with applicable procedures to afford Petitioner a credible fear interview and, if necessary, review of any adverse determination in credible fear proceedings before an immigration Judge.
2. Petitioner previously was detained by Respondents and was ordered released from custody by the Honorable R. Gary Klausner in case number 5:26-cv-02972 in an habeas action filed earlier this year.
3. Petitioner asks the Court to prohibit his removal or transfer during the pendency of this proceeding without advance notice to the Court and Petitioner's counsel and opportunity to respond.
4. Petitioner's detention is in violation of 8 CFR § 241.4(l) and § 241.13(i). These regulations require that cancellation of order of supervision and redetention occur only if there are (1) changed circumstances; (2) notice and opportunity to be heard as to the basis for revocation and likelihood of removal. Further, redetention is only lawful if removal is reasonably foreseeable. Detention is also unlawful because Respondents did not lawfully revoke Petitioner's parole or provide a credible fear interview pursuant to § 1225(b) despite Petitioner's explicit indication of a fear of persecution in Cambodia if returned.
5. Petitioner asks the Court to order Respondents to respond within 5 days. There should be no complex factual issues in this case and Respondents have unfettered access to Petitioner's immigration file.
6. Petitioner, a citizen of Cambodia, entered the United States together with his entire immediate family at the age of 7 as refugees. He later became a lawful permanent resident of the United States.
7. Petitioner was ordered removed on June 13, 2000 when he missed a scheduled immigration court hearing. He departed the United States the following year intending a brief trip to Mexico. At the

port of entry, seeking admission to the United States, he was placed in expedited removal proceedings. He was not afforded a credible fear interview pursuant to § 1225(b) but was paroled into the United States and released from custody on an order of supervision.

8. For almost a quarter century, Respondents did not seek to complete the expedited removal process or to provide Petitioner with a credible fear interview. Petitioner has now repeatedly expressed a fear of return to Cambodia and has explicitly requested provision of a credible fear interview.

9. Petitioner has cooperated with all requests from ICE and has never failed to report as required. Petitioner made multiple efforts to obtain a travel document from Cambodia as requested.

10. Petitioner was previously in the custody of Immigration Customs Enforcement (ICE) for 172 days beginning in 2001. He was redetained in 2026 and held from May 15, 2026 through July 15, 2026.

11. Petitioner has been in Respondents' custody, for the purposes of 1231(a), for at least 24 years with actual physical custody for over 180 days.

12. Petitioner was arrested by ICE at a scheduled check-in meeting on September 4, 2026. No notice of reasons for cancellation of the order of supervision, of changed circumstances, or opportunity to respond has been provided. Petitioner was informed that Respondents had obtained a travel document and that he would be removed by "next Tuesday."

13. Petitioner has appeared at every required check-in, was afforded work authorization by Respondents and has built a new life in the United States following the order of removal.

14. Petitioner is now married to a U.S. citizen and has two minor U.S. citizen children.

15. Civil immigration detention is permissible only when it bears a reasonable relationship to a legitimate, non-punitive governmental purpose. Detention that is untethered from removal and imposed in the absence of flight risk, danger, or imminent deportation is punitive in effect and unconstitutional. Here, removal is not significantly likely in the reasonably foreseeable future. ICE

made no efforts to obtain necessary travel documents or to facilitate removal in advance of the arrest and has taken no action since the date of the arrest.

16. Because Respondents lacked lawful authority to detain Petitioner at the moment of his re-arrest, and because continued detention serves no legitimate purpose, this Court should grant the writ and order Petitioner's immediate release.

## II. CUSTODY

**17.** Petitioner is in the physical and legal custody of Respondents and is detained at the time of filing at 300 North Los Angeles St. Room 7631 Los Angeles, CA 90012

## III. PARTIES

18. Petitioner, Sambo James Yim, is a citizen of Cambodia who entered the United States as a refugee in or about December of 1980 at the age of seven.

19. Respondent Ernesto Santacruz Jr. is the Acting Field Office Director of the Los Angeles Office of Detention and Removal Operations for ICE. He is responsible for custody and detention decisions within the Los Angeles Area of Responsibility and is named in his official capacity.

20. Respondent Todd Blanche is the Acting Attorney General of the United States and is named in their official capacity.

## IV. JURISDICTION AND VENUE

21. This action arises under the United States Constitution and INA, 8 U.S.C. § 1101 et seq., to challenge Petitioner Sambo James Yim's detention under the Constitution, the Immigration and Nationality Act, and any inherent or plenary powers the government may claim to justify his continued incarceration.

22. This Court has jurisdiction under 28 U.S.C. § 2241, U.S. Const. art. I, § 9, cl. 2, and 28 U.S.C. § 1331 because Petitioner is in the custody of Respondents under color of authority of the United States, and that custody violates the Constitution, laws, or treaties of the United States. This

Court's jurisdiction is not limited by Petitioner's nationality, immigration status, or any other classification. See Boumediene v. Bush, 553 U.S. 723, 747 (2008).

23. This Court may grant relief pursuant to U.S. Const. art. I, § 9, cl. 2, U.S. Const. amend. V, 28 U.S.C. § 2241, 28 U.S.C. § 1361, and 28 U.S.C. § 1651.

24. Specifically, this Court has jurisdiction under 28 U.S.C. § 2241 to review Petitioner's detention. Federal district courts possess broad authority to issue writs of habeas corpus when a person is held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). That authority extends to challenges to immigration detention and survives the jurisdictional limitations imposed by the REAL ID Act.

25. Because Petitioner seeks the traditional habeas remedy of release from allegedly unlawful detention, rather than review of the validity of his underlying removal order, this petition presents precisely the type of threshold legality-of-detention claim that § 2241 was designed to address. *See* INS v. St. Cyr, 533 U.S. 289, 301 (2001); *see also* Lopez-Marroquin v. Barr, 955 F.3d 759, 762 (9th Cir. 2020) (*citing* Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)). No court has previously ruled on the legality of Petitioner's current detention.

26. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) and 1391(e)(1) because a substantial part of the events or omissions giving rise to this action occurred within this District, Petitioner is detained within this District, and his custodian resides within this District.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

27. For habeas corpus claims, exhaustion of administrative remedies is prudential, not jurisdictional. Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017). A court may waive the prudential exhaustion requirement where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Id. (*quoting* Laing v. Ashcroft, 370 F.3d

994, 1000 (9th Cir. 2004)). Exhaustion should be waived here because administrative remedies are futile and Petitioner's continued detention causes irreparable harm.

28. Moreover, no statutory exhaustion requirement applies to Petitioner's claim that his detention violates the Constitution. Courts have repeatedly held that exhaustion is not required where, as here, the agency lacks authority to adjudicate constitutional claims. *See* Am.-Arab Anti-Discrimination Comm. v. Reno, 70 F.3d 1045, 1058 (9th Cir. 1995) (exhaustion excused where it would be a "futile exercise because the agency does not have jurisdiction to review" constitutional claims); In re Indefinite Detention Cases, 82 F. Supp. 2d 1098, 1099 (C.D. Cal. 2000).

29. In addition, Petitioner's continued detention results in irreparable harm that cannot be remedied through later relief. Each day of continued detention places his and his family's physical and mental health at heightened risk and inflicts harm that cannot be undone. Courts have recognized that ongoing immigration detention causing psychological and medical deterioration constitutes irreparable harm warranting waiver of exhaustion. *See* De Paz Sales v. Barr, No. 19-CV-07221-KAW, 2020 WL 353465, at *4 (N.D. Cal. Jan. 21, 2020). Under these circumstances, prudential exhaustion should be waived.

## VI. RELEVANT FACTUAL BACKGROUND

30. Petitioner is a citizen of Cambodia.

31. Petitioner's family was targeted by the Khmer Rouge due to his father's involvement with the former regime's military.

32. Petitioner was separated from his family and held in a Khmer Rouge detention camp together with other children.

33. Petitioner escaped the camp, traveled through a jungle alone for two days, and reunited with his family.

34. Petitioner has vivid memories of the war, wide-spread death and violence and is aware that many family members were murdered during this time.

35. Petitioner entered the United States in December of 1980 together with his entire immediate family including mother, father, and six siblings.

36. Petitioner, then 7-years-old, and his family, were admitted as refugees.

37. They were resettled to Minnesota under the sponsorship of the U.S. Catholic Conference.

38. Petitioner later adjusted his status to that of a lawful permanent resident in 1984.

39. His mother later became a U.S. citizen though this occurred after Petitioner's 18th birthday by a period of about six months meaning that Petitioner could not automatically acquire U.S. citizenship.

40. In October of 1994, Petitioner was convicted for 3rd Degree criminal sexual conduct in violation of Minesota Code § 609.3441B (statutory sex offense). The offense related to consensual sexual contact between Petitioner and his then girlfriend who was then sixteen years of age.

41. In October of 1995, Petitioner was charged in U.S. District Court for the District of North Dakota and later convicted pursuant to pleas agreement for the offenses of possession of a firearm that had been moved in interstate commerce without a serial number and for receipt of stolen firearm which had been moved in interstate commerce. He was sentenced to 30 months imprisonment and 2-years supervised release as well as $2,662 in restitution.

42. Petitioner served his sentence but was taken directly into custody by ICE rather than being released.

43. On information and belief, Petitioner remained in ICE custody for approximately 8 months.

44. Removal proceedings under §1229a were initiated.

45. The Judge ordered removal on June 13. 2000 as Petitioner failed to appear at a scheduled hearing. No appeal was filed from this decision though Petitioner, acting pro se, immediately filed a motion to reopen which was denied by the Immigration Judge.
46. Petitioner briefly departed the United States on or about July 22, 2001, to visit Mexico.
47. On or about July 22, 2001, Petitioner left the U.S. for Mexico for a planned one day excursion.
48. On or about July 23, 2001, Petitioner sought entry to the U.S. through an immigration checkpoint at the San Ysidro point of entry.
49. Petitioner was detained and held in custody for more than 172 days.
50. Petitioner was released from custody on parole and on an Order of Supervision.
51. Paperwork suggests that Petitioner was processed for expedited removal proceedings; however, Petitioner was not removed and was not offered an opportunity to establish a credible fear of persecution at a credible fear interview.
52. Petitioner has reported to ICE pursuant to the terms of the Order of Supervision every year since then.
53. In 2011, ICE initiated paperwork indicating it intended to subject Petitioner to INA § 241(a)(5) (reinstatement of removal procedures). However, Petitioner did not reenter the U.S. ‘unlawfully’ and was not subject to reinstatement of removal.
54. At some unknown date Petitioner was briefly required to wear a GPS location monitoring unit which was affixed to his ankle; the monitoring unit was removed by ICE after approximately 3-4 months.
55. Petitioners have maintained employment authorization and has worked for the same company since 1998. Petitioner now owns his own equipment rental business in addition to his full-time employment.

56. Petitioner is the sole provider for his U.S. citizen spouse, two U.S. citizen daughters (ages 10 and 13). He shares his household with his 87-year-old mother who is now a naturalized U.S. citizen.

57. Petitioner has cooperated with all requests from ICE to assist in obtaining travel documents from the Cambodian government.

58. On or about 2008 and 2012, Petitioner submitted a passport application to the Cambodian government and provided proof to ICE of such application.

59. No response was received and no passport was issued.

60. In 2025, Petitioner submitted a passport application through proper channels to the Cambodian government.

61. Petitioners provided proof to ICE of such application.

62. The Cambodian government has not been able or willing to issue a travel document in response to that application.

63. Significant changes in immigration law have occurred since that date including as to eligibility for relief from removal.

64. Petitioner is investigating whether a new motion to reopen can be filed at this time based on changes in relevant laws relating to eligibility for relief under former INA § 212(c) as well as under § INA 212(h) (8 USC 1182(h)).

65. On September 4, 2026, Petitioner was detained by ICE at a scheduled appointment.

66. Petitioner was not provided advance notice or opportunity to respond to reasons for revocation of release.

67. Respondents informed Petitioner that Respondents had secured travel document and intended to remove him by “next Tuesday.”

68. Petitioner informed Respondents that he has a fear of return to Cambodia and explicitly requested a credible fear interview pursuant § 1225(b).

69. **STATUTORY FRAMEWORK**

30. Section 1231(a) of Title 8 governs the detention of individuals whom immigration courts have ordered removed. The statute mandates that ICE detain such individuals during the ninety-day removal period while it attempts to execute the removal order. *See* 8 U.S.C. § 1231(a)(2).

31. The ninety-day removal period begins when the removal order becomes administratively final. *See* 8 U.S.C. § 1231(a)(1)(B). Absent an applicable exception, if ICE cannot complete removal within the ninety-day period, it must release the individual under conditions of supervision. *See* 8 U.S.C. § 1231(a)(3).

32. Subsection 1231(a)(6) authorizes ICE to extend detention beyond the ninety-day removal period for certain categories of noncitizens.

33. That authority, however, is not unlimited. In Zadvydas v. Davis, the Supreme Court held that § 1231(a)(6) does not permit indefinite detention and must be construed to authorize detention only for a period "reasonably necessary" to effectuate removal. 533 U.S. 678, 689 (2001). Where removal is not reasonably foreseeable, continued detention exceeds statutory authority. Id. at 701.

34. DHS regulations implementing § 1231(a) permit ICE to release a noncitizen after the ninety-day removal period if the agency determines that the individual "would not pose a danger to the public or a risk of flight," without regard to whether removal is likely in the reasonably foreseeable future. 8 C.F.R. § 241.13(b)(1). Release under these provisions reflects an individualized determination that continued detention is not necessary to serve the purposes of the statute.

35. Once release has been granted, ICE may withdraw or revoke that release only in limited circumstances. ICE may withdraw release if it determines that removal can be effectuated "in the reasonably foreseeable future" or if the noncitizen violates the conditions of release. 8 C.F.R. § 241.13(h)(4). Even then, ICE may revoke release only when "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id*. § 241.13(i)(2). Upon

revocation, ICE must provide the noncitizen with notice of the reasons for the revocation. *Id.* § 241.13(i)(3).

36. In addition, agency action taken pursuant to § 1231(a) is subject to the requirements of the Administrative Procedure Act. Under the APA, courts must "hold unlawful and set aside agency action" that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). An agency must articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made. Dep't of Com. v. New York, 139 S. Ct. 2551, 2569 (2019).

37. Immigration detention is civil, not punitive, and may not be used as a mechanism of punishment. Detention is permissible only when, based on an individualized determination, it serves a legitimate regulatory purpose, namely, preventing flight or protecting the community. *See* Zadvydas, 533 U.S. at 690. Where detention does not further those purposes, it violates both statutory limits and constitutional due process.

38. "Freedom from imprisonment - from government custody, detention, or other forms of physical restraint - lies at the heart of the liberty that the Due Process Clause protects." *Id.* The Due Process Clause applies to all "persons" within the United States, including noncitizens, regardless of immigration status. Id. at 693.

## VII. LEGAL ANALYSIS

39. The Due Process Clause of the Fifth Amendment protects all persons within the United States, including noncitizens, from arbitrary deprivation of liberty. Freedom from physical detention lies at the core of the liberty protected by the Constitution. Immigration detention is civil rather than criminal, and it is constitutionally permissible only when it bears a reasonable relationship to a legitimate, non-punitive governmental purpose. Zadvydas v. Davis, 533 U.S. 678, 690–93 (2001). When detention ceases to serve that purpose, it becomes punitive in effect and violates due process.

40. Post-final-order detention is governed by 8 U.S.C. § 1231(a). While detention is mandatory during the ninety-day removal period, continued detention thereafter is discretionary and subject to strict constitutional limits. In Zadvydas, the Supreme Court held that § 1231(a)(6) authorizes detention only for the period reasonably necessary to effectuate removal and does not permit indefinite or potentially permanent detention. 533 U.S. at 689. The Court identified six months as a presumptively reasonable benchmark, after which continued custody is presumptively unlawful unless the government demonstrates a significant likelihood of removal in the reasonably foreseeable future. *Id*. at 701.

41. Detention is lawful only so long as it remains tethered to the purpose of effectuating removal. Where detention bears no reasonable relationship to removal, because no concrete removal plan exists or removal is not realistically foreseeable, it exceeds statutory authority and violates due process, even if the duration of custody is brief.

42. The six-month benchmark cannot be evaded through serial release and re-detention. Courts evaluating detention under § 1231(a)(6) must assess reasonableness in context, including prior detention and prolonged periods during which the government had the ability to pursue removal but failed to do so. *See* Zadvydas, 533 U.S. at 690; Clark v. Martinez, 543 U.S. 371, 386–87 (2005); Sied v. Nielsen, No. 17-cv-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018).

43. The government's prolonged delay or inaction while Petitioner was at liberty weighs heavily against the lawfulness of renewed detention. The purpose of post-order detention is to facilitate removal, not to punish or incapacitate. Zadvydas, 533 U.S. at 690. Where the government had years to pursue removal under supervision but failed to do so, re-detention does not further the statute's purpose and instead raises the very constitutional concerns the Supreme Court sought to prevent. *See* Clark, 543 U.S. at 386.

44. The government also fails to meet its burden under Zadvydas. Continued detention is lawful only if DHS can show a "significant likelihood of removal in the reasonably foreseeable future," not mere speculation. 533 U.S. at 701. The Ninth Circuit has repeatedly held that detention is unlawful where DHS cannot identify a specific country willing to accept the noncitizen or provide concrete evidence that removal is imminent. *See* Diouf v. Napolitano, 634 F.3d 1081, 1086–87 (9th Cir. 2011); Nadarajah v. Gonzales, 443 F.3d 1069, 1078–79 (9th Cir. 2006).

45. ICE's own conduct confirms that detention has never been necessary to effectuate Petitioner's removal. Petitioner has been free on order of supervision issued by ICE for about 25 years. Petitioner complied with the order of supervision year after year and nothing changed between the prior check in date and the arrest at the May 15, 2026 scheduled Detention following years of successful supervision and in the absence of changed circumstances is not justified, legal, and is only intended as a punitive measure or to instill fear in Petitioner and others in the community.

46. The existence of a final order of removal does not itself authorize detention. If it did, Zadvydas would have no meaning. Both the statute and the Constitution require a showing that removal is significantly likely in the reasonably foreseeable future. Respondents have not made that showing here.

47. Speculative third-country removal cannot satisfy the government's burden. Removal to a third country requires that country's acceptance. 8 U.S.C. § 1231(b)(2). Respondents have not identified any country willing to accept Petitioner, produced evidence of negotiations, or provided any timeline for removal. A theoretical possibility of removal is not the same as a significant likelihood of removal in the reasonably foreseeable future.

48. Independently, Petitioner's detention is unlawful because it constitutes a de facto revocation of supervision without compliance with mandatory regulatory procedures. Under 8 C.F.R. §§ 241.4(l) and 241.13(i), ICE may revoke an Order of Supervision only for violations or materially

changed circumstances and only after notice, an opportunity to respond, and an informal interview. ICE alleged no violation, identified no changed circumstances, and provided no process.

49. Under the *Accardi* doctrine, agency action taken in violation of its own regulations designed to protect individual rights is invalid. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954). Because the OSUP regulations protect a fundamental liberty interest, no showing of prejudice is required.

50. Petitioner's detention also violates procedural due process. Under Mathews v. Eldridge, 424 U.S. 319 (1976), the private interest in freedom from detention is fundamental, the risk of error is extreme where ICE detains without notice or hearing, and the government's interest is minimal given its repeated determination that supervision suffices.

51. Substantively, detention that is untethered from any legitimate regulatory purpose violates due process. When removal is not reasonably foreseeable, continued detention becomes unconstitutional. Zadvydas, 533 U.S. at 690.

52. Respondents' actions are also arbitrary and capricious under the Administrative Procedure Act. ICE repeatedly determined that Petitioner could remain at liberty, induced reliance through supervision, and then reversed course without explanation, evidence, or changed circumstances.

53. The only lawful remedy is immediate release under Petitioner's prior conditions of supervision or equivalent non-custodial conditions.

## VIII. REQUIREMENTS OF 28 U.S.C. § 2243

54. Under 28 U.S.C. § 2243, the Court must grant the petition for a writ of habeas corpus or issue an order to show cause to Respondents "forthwith," unless it appears from the application that the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the statute

further requires that the Court direct Respondents to file a return "within three days unless for good cause additional time, *not exceeding twenty days*, is allowed." *Id.* (emphasis added).

55. Courts have long recognized the central role of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been described as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

56. Habeas corpus must remain a swift and effective remedy. The Ninth Circuit has emphasized that "[t]he statute itself directs courts to give petitions for habeas corpus 'special, preferential consideration to insure expeditious hearing and determination.'" *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (internal citations omitted). The Ninth Circuit further cautioned against any action that would create the perception "that courts are more concerned with efficient trial management than with the vindication of constitutional rights." *Id.*

## IX. CLAIMS FOR RELIEF

### COUNT I: UNLAWFUL DETENTION IN VIOLATION OF 8 U.S.C. § 1231(a)(6) AND ZADVYDAS v. DAVIS

57. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

58. To the extent Petitioner is detained pursuant to a final order of removal and is therefore subject to the post-removal detention framework set forth in 8 U.S.C. § 1231(a)., the detention is unlawful because removal is not reasonably foreseeable.

59. Respondents cannot meet that burden here. Removal is not reasonably foreseeable where respondents have yet to schedule Petitioner for a credible fear interview under § 1225(b) and where, even if an interview were scheduled, a negative decision were issued, Petitioner would still have right to request review before an immigration judge.

*60.* Because Respondents have failed to demonstrate a significant likelihood of removal in the reasonably foreseeable future, Petitioner's continued detention exceeds statutory authority and is unlawful under 8 U.S.C. § 1231(a)(6) and Zadvydas.

**COUNT II: VIOLATION OF THE FIFTH AMENDMENT DUE PROCESS CLAUSE SUBSTANTIVE DUE PROCESS**

61. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

62. The Fifth Amendment's Due Process Clause protects all persons within the United States, including noncitizens, from arbitrary deprivation of liberty. Civil immigration detention is constitutionally permissible only when it bears a reasonable relationship to a legitimate, non-punitive governmental purpose, such as preventing flight or protecting the community. *Zadvydas*, 533 U.S. at 690–92.

63. Respondents' detention of Petitioner serves no legitimate regulatory purpose. ICE has repeatedly determined that Petitioner does not pose a danger and is not a flight risk and may remain at liberty under supervision. Petitioner complied with all conditions of parole and order of supervision for 26 years Nothing material changed between Petitioner's last check in and continued release on order of supervision and the recent arrest. Obtaining a travel document is not relevant here as Respondents have not provided a credible fear interview despite Petitioner's indication of fear of return.

64. Where detention follows years of successful supervision and occurs absent changed circumstances or imminent removal, it is punitive in effect and not reasonably related to effectuating removal. Petitioner's detention therefore violates substantive due process.

**COUNT III: VIOLATION OF THE FIFTH AMENDMENT DUE PROCESS CLAUSE — PROCEDURAL DUE PROCESS**

65. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

66. Procedural due process requires, at minimum, notice and a meaningful opportunity to be heard before the government deprives an individual of liberty. Mathews v. Eldridge, 424 U.S. 319 (1976).

67. Petitioner's interest in freedom from physical detention is fundamental. The risk of erroneous deprivation is extraordinarily high where ICE detains an individual without notice, without a hearing, and without making any individualized findings. The government's interest in immediate detention is minimal where ICE has repeatedly determined that supervision suffices and where removal is not imminent.

68. Respondents detained Petitioner without proper revocation of parole, prior notice, without identifying any violation or materially changed circumstance, and without providing any opportunity to contest the deprivation of liberty. This failure to provide even minimal procedural safeguards violates the Fifth Amendment.

**COUNT IV: UNLAWFUL REVOCATION OF ORDER OF SUPERVISION AND VIOLATION OF DHS REGULATIONS**

69. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

70. Petitioner's re-detention constitutes a de facto revocation of his Order of Supervision DHS regulations strictly limit when and how ICE may revoke release. Under 8 C.F.R. §§ 241.4(l) and 241.13(i), ICE may revoke supervision only upon a violation of release conditions or materially changed circumstances and only after providing notice, an opportunity to respond, and an informal interview.

71. Respondents did not allege that Petitioner violated any condition of supervision, did not identify any materially changed circumstances, and did not provide notice, conduct an interview, or issue a revocation determination prior to detaining Petitioner.

72. Because these regulations protect a fundamental liberty interest, Respondents' failure to comply renders Petitioner's detention unlawful.

**COUNT V: VIOLATION OF THE *ACCARDI* DOCTRINE**

73. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

74. Under the *Accardi* doctrine, agency action taken in violation of binding regulations designed to protect individual rights is invalid. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954). Where such regulations protect liberty interests, no showing of prejudice is required.

75. The regulations governing revocation of supervision are mandatory and designed to protect noncitizens from arbitrary detention. Respondents violated these binding regulations by detaining Petitioner without complying with required procedures. As a result, Petitioner's detention is unlawful and must be set aside.

## X. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1) Assume jurisdiction over this action pursuant to 28 U.S.C. § 2241;
2) Issue a writ of habeas corpus declaring that Petitioner's detention is unlawful under the Constitution and laws of the United States;
3) Order Petitioner's immediate release from ICE custody, under his prior Order of Supervision, or other reasonable non-custodial conditions deemed appropriate by the Court;
4) Enjoin Respondents from re-detaining Petitioner absent a material change in circumstances and full compliance with governing statutes, regulations, and due process requirements;
5) Prohibit Respondents from transferring Petitioner out of the jurisdiction of this Court without prior Court approval;

6) Declare Respondents' actions unlawful under 8 U.S.C. § 1231(a)(6), the Fifth Amendment to the United States Constitution, DHS regulations, and the Administrative Procedure Act;

7) Award Petitioner his costs and reasonable attorneys' fees as authorized by law; and

8) Grant such other and further relief as the Court deems just and proper.

June 1, 2026

Respectfully Submitted,

/s/Ben Loveman

BEN LOVEMAN, CA SBN 249970
REEVES IMMIGRATION LAW GROUP
425 California Street, Suite 1250
San Francisco, Ca 94104
TEL: (415) 960-5182
bloveman@reevesimmigration.com

Attorneys for Petitioner

**28 U.S.C. § 2242 VERIFICATION STATEMENT**

I am submitting this verification on behalf of the Petitioner because I am the Petitioner's attorney. On the basis of documents, discussion with Petitioner and Petitioner's family, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge subject to penalty of perjury.

May 27, 2026

/s/Ben Loveman

BEN LOVEMAN, CA SBN 249970
REEVES IMMIGRATION LAW GROUP
425 California Street, Suite 1250
San Francisco, Ca 94104
TEL: (415) 960-5182
bloveman@reevesimmigration.com