**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SAMBO JAMES YIM,

Petitioner,

v.

ERNESTO SANTACRUZ, JR. et al.,

Respondents.

Case No. 2:26-cv-10004-MAR

**ORDER GRANTING HABEAS PETITION AND ORDERING IMMEDIATE RELEASE**

**I.**

## INTRODUCTION & PROCEDURAL HISTORY

On September 4, 2026, Petitioner Sambo James Yim (A# 025-110-060) ("Petitioner"), an immigration detainee, filed, through counsel, a Petition for Writ of Habeas Corpus by a Person in Federal Custody pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging his detention at the Adelanto Detention Center. Dkt. 1 ("Pet.") at 2. Respondents filed an Answer indicating they are not presenting an opposition argument. Dkt. 7 ("Answer"). Petitioner filed a Reply. Dkt. 8 ("Reply").

For the reasons set forth below, the Court **GRANTS** the Petition and orders Respondents to immediately release Petitioner.

## II.

## FACTUAL BACKGROUND

Petitioner is a citizen of Cambodia who entered the United States as a refugee in December 1980 at the age of seven. Pet. at 7–8. Petitioner was ordered removed on June 13, 2000. Id. at 8. Petitioner was detained from July 22, or July 23, 2001 through January 10, 2002 and then was released from custody on an order of supervision. Id. Petitioner has appeared at every required check-in and was afforded work authorization. Id. at 8–9. Petitioner is married to a U.S. citizen and has two minor U.S. citizen children. Id. Petitioner has submitted multiple passport applications to the Cambodian government, in 2008, 2012, and 2025. Id. at 9. The Cambodian government has not issued travel documents in response. Id.

Petitioner was arrested by ICE at a scheduled check-in meeting on September 4, 2026. Id. Petitioner was not provided advance notice or opportunity to respond to reasons for revocation of release. Id. Petitioner was informed that travel documents had been secured and that he would be removed within a week. Petitioner expressed a fear of returning to Cambodia and requested a credible fear interview.

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner asserts six claims challenging the revocation of his OSUP and his continued detention. Pet. at 15–18. First, Petitioner asserts his detention violates 8 U.S.C. § 1231(a)(6) and Zadvydas v. Davis because his removal is not significantly likely in the reasonably foreseeable future ("Count One"). Pet. at 15. Second, Petitioner asserts constitutional claims under the Fifth Amendment. Petitioner alleges that his continued detention violates substantive due process because ICE revoked his OSUP and re-detained him even though he allegedly posed neither a danger to the community nor a flight risk, and he has not been provided a credible fear interview ("Count Two").

Id. at 16. Petitioner further alleges that Respondents violated his procedural due process rights by revoking his OSUP without providing adequate notice of the reasons for revocation or a meaningful opportunity to respond before his re-detention ("Count Three"). Id. at 16–17. Petitioner contends that the lack of procedural safeguards created a substantial risk of erroneous deprivation of liberty under the balancing test set forth in Mathews v. Eldridge, 424 U.S. 319, 333 (1976). Id.r

Third, Petitioner asserts claims that Respondents acted outside their statutory authority and failed to follow their own governing procedures when revoking his OSUP. Petitioner asserts that his re-detention constitutes a de facto revocation of his OSUP in violation of the procedures required under 8 C.F.R. §§ 241.4(l) and 241.13(i) ("Count Four"). Id. at 17. He argues that Respondents did not allege that Petitioner violated any conditions of release or materially changed circumstances and did not provide notice, an informal interview, or issue a revocation determination prior to detaining Petitioner. Id. Petitioner further alleges that Respondents failure to comply with required procedures violated the Accardi doctrine ("Count Five"). Id. at 17–18.

Based on these claims, Petitioner seeks declaratory and injunctive relief relating to his detention and potential removal. Id. at 19–20. Specifically, Petitioner requests that the Court order his immediate release from detention under his prior OSUP or other reasonable non-custodial conditions and enjoin Respondents from re-detaining him absent a material change in circumstances and full compliance with governing statutes, regulations, and due process requirements. Petitioner also seeks an order prohibiting Respondents from transferring Petitioner out of the jurisdiction of this Court without prior Court approval. Finally, Petitioner requests attorney's fees and costs under the Equal Access to Justice Act and any other relief the Court deems appropriate. Id.

## IV.

## LEGAL STANDARD

The Immigration and Nationality Act ("INA") establishes the procedures

governing detention, release, and removal of noncitizens ordered removed from the United States. The statute at issue here, 8 U.S.C. § 1231(a), applies to detention following the entry of final order of removal, including individuals in withholding-only proceedings. See Johnson v. Guzman Chavez, 594 U. S. 523, 533 (2021); Avilez v. Garland, 69 F.4th 525, 530 (9th Cir. 2023).

Under 8 U.S.C. § 1231(a)(1)(A), an alien who has been ordered removed must be detained during the 90-day removal period. 8 U.S.C. § 1231(a)(1)(A); see also Johnson v. Arteaga-Martinez, 596 U.S. 573, 578 (2022). Detention during the removal period is mandatory. See 8 U.S.C. § 1231(a)(2). After the 90-day removal period, "the Government 'may' continue to detain an alien who still remains here or release that alien under supervision." Zadvydas, 533 U.S. at 683 (quoting 8 U.S.C. § 1231(a)(6)). However, Section 1231(a)(6) includes an implicit limit on "an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Id. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. Recognizing constitutional concerns raised by such prolonged detention, the Supreme Court observed "Congress previously doubted the constitutionality of detention for more than six months," and, therefore, "for the sake of uniform administration in the federal courts," established a presumptively reasonable six-month period for post-removal-order detention. Id. at 701. This six-month period is a presumption, not a guarantee of release, and detention may continue so long as removal remains reasonably foreseeable. Id.

After the six-month period, the burden is on the alien to show that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id.; see also 8 C.F.R. § 241.13 (setting out procedures to determine whether there is a significant likelihood of removal pursuant to Zadvydas). If the alien meets this burden, then the Government must "introduce evidence to refute that assertion" or release the alien. Id. However, the alien still "may

be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. Importantly, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

## V.

## DISCUSSION

### A. Petitioner's Detention Is Prolonged Under *Zadvydas*.

Under 8 U.S.C. § 1231(a)(6), an alien subject to a final order of removal may be detained beyond the 90-day removal period only for a period reasonably necessary to effectuate removal. See Zadvydas, 533 U.S. at 689. Recognizing the constitutional concerns raised by indefinite immigration detention, the Supreme Court established a presumptively reasonable six-month period for post-removal-order detention. See id. at 701. After that period, continued detention is permissible only if removal remains reasonably foreseeable. See id.

Here, according to Petiitoner, ICE detained him for 172 days in 2001 prior to his release under an OSUP. Pet. at 3. Since that time, Petitioner has been free under an OSUP for 25 years. Id. Petitioner has now been detained over 180 days. Therefore, Petitioner contends that his detention has been prolonged under Zadvydas.

"Most courts to consider the issue have concluded that the Zadvydas period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them." Siguenza v. Moniz, 2025 WL 2734704, at *3 (D. Mass. Sep. 25, 2025); Ta v. Noem, 2025 WL 3716155, at *5 (C.D. Cal. Nov. 10, 2025) ("The Supreme Court's concern that indefinite or prolonged detention would be unconstitutional applies equally to a single prolonged detention as it does to a detention that is broken up into shorter periods."); accord Yakoub v. Marin, 2026 WL 922015, at *4 (C.D. Cal. Mar. 31, 2026). In other words, "the six-month period does not reset when the government

detains an alien under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again." Sied v. Nielsen, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018). Instead, all periods of post-removal-order detention should be aggregated to determine whether the detention is prolonged under Zadvydas. See, e.g., Nguyen v. Scott, 796 F. Supp. 3d 703, 721-22 (W.D. Wash. 2025) (collecting cases).

Respondents do not contest the calculation of Petitioner's total post-removal-order detention. Thus, the Court concludes that Petitioner's post-removal-order detention has exceeded the presumptively reasonable six-month period and therefore constitutes prolonged detention under Zadvydas and Section 1231(a)(6). Because the six-month period has elapsed and Petitioner's detention is no longer "presumptively reasonable," the burden shifts to Petitioner to demonstrate "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701. The Court therefore turns to whether Petitioner has satisfied that burden.

**B. Petitioner Has Demonstrated That Removal Is Not Reasonably Foreseeable.**

Once detention extends beyond the presumptively reasonable six-month period, the detainee bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701. If the detainee makes such a showing, the burden shifts to the Government to produce evidence sufficient to rebut that showing. Id.

Here, Petitioner contends that his removal is not reasonably foreseeable because Respondents have not conducted a credible fear interview and, if one were scheduled and a negative decision issued, Petitioner would still have the right to request review before an immigration judge. The Court concludes that Petitioner has satisfied his burden of demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future. Furthermore, Respondents do not present an opposition argument and therefore concede Petitioner's claims. See Singh v. Chiang,

No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession); Ramirez-Perez v. Semaia, No. 5:26-cv-04499-ACCV, 2026 WL 2447929 (C.D. Cal. Aug. 20, 2026). Accordingly, the Court concludes that Respondents have failed to rebut Petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future.

In sum, the Court concludes that Petitioner's removal is not reasonably foreseeable under Zavydas. See Zadvydas, 533 U.S. at 701. Accordingly, Petitioner's detention under 8 U.S.C. § 1231(a)(6) is no longer authorized and Petitioner is entitled to release.[1] See id. at 699 ("[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute.").

The Court further concludes that Petitioner is entitled to notice and an opportunity to respond that comports with 8 C.F.R. § 241.13(i) should Respondents attempt to re-detain Petitioner in the future. See, e.g., Valdez-Batista, 2026 WL 449531, at *4 ("[I]n the event they seek to re-detain Petitioner in the future, Respondents must provide notice and an opportunity to respond that comports with 8 C.F.R. § 241.13(i)."). Indeed, the re-detention of a noncitizen subject to a final order of removal is governed by 8 C.F.R. § 241.13. The regulation was "intended to provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release." Constantinovici v. Bondi, 806 F. Supp. 3d 1155, 1163 (S.D. Cal. 2025) (internal quotation marks, brackets, and ellipses omitted). The regulation states, in part, that "[t]he Service may revoke [a noncitizen's] release under this section and return the [noncitizen] to custody if, on account of changed circumstances, the Service determines

---

1 The Court also finds that Petitioner's re-detention violated 8 C.F.R. §§ 241.4(l) and 241.13(i) in that Respondents failed to provide notice, an opportunity to respond, or an interview prior to Petitioner's re-detention. This is an independent basis for ordering Petitioner's release. Delkash v. Noem, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *4 (C.D. Cal. Aug. 28, 2025).

that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13. The regulation also provides that, "[u]pon revocation [of an OSUP], the [noncitizen] will be notified of the reasons for revocation of his or her release," and that there will be "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3).

## VI.

## ORDER

IT IS ORDERED that the Petition is **GRANTED**. Respondents are ORDERED to immediately release Petitioner Sambo James Yim **(A# 025-110-060)** on his prior OSUP and are ENJOINED from re-detaining Petitioner absent a material change in circumstances and full compliance with 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(1), and due process.[2] Respondents are ORDERED to file a notice of compliance within twenty-four hours.

DATED: October 2, 2026

HON. MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE

2 In order to revoke release, the government must notify the noncitizen of the reason for the revocation and give them both an informal and formal interview. Delkash v. Noem, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *4 (C.D. Cal. Aug. 28, 2025). "Petitioner must be told what circumstances had changed . . . in order to meaningfully respond to the reasons and submit evidence in opposition." See Hashemi v. Noem, 809 F. Supp. 3d 1027, 1035 (C.D. Cal. 2025); 8 C.F.R. § 241.13(i)(3) ("afford[ing] [noncitizens] an opportunity to respond to the reasons for revocation," includes an opportunity to "submit any evidence or information that he . . . believes shows there is no significant likelihood he… [will] be removed in the reasonably foreseeable future")).